Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan H. Lefkow | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 1240 | **DATE** | 9/28/2001 |
| **CASE TITLE** | Talley vs. City of Chicago, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Defendants' motion to dismiss [22-1] is denied as to Hillard but granted as to City of Chicago. Defendants' motion to dismiss [24-1] is granted as follows: all claims against defendant City are dismissed; all claims against defendants Peters, Hardy, Baetong, Bailey, Tiongsen and Johnson are dismissed; Count I § 1983 claim with respect to Hillard, in his individual capacity, survives, as does any claim with respect to the unknown police officers, since they have not moved for dismissal. Because this is the plaintiff's third attempt to plead his claims, the dismissed claims are dismissed with prejudice. Status hearing is set for 10/23/01 at 9:30 a.m.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | 4 | **Document Number** |
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | SEP 28 2001 | |
| | Notified counsel by telephone. | | date docketed | 20 |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | FILED FOR DOCKETING | docketing deputy initials | |
| | Copy to judge/magistrate judge. | 01 SEP 28 PM 3: 25 | 9/28/2001 date mailed notice | |
| MD | courtroom deputy's initials | Date/time received in central Clerk's Office | MD mailing deputy initials | |

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CURTIS TALLEY | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 00 C 1240 |
| | ) | |
| CITY OF CHICAGO, a municipal | ) | |
| corporation; TERRY HILLARD, | ) | |
| Superintendent of Chicago Police | ) | |
| Department, in his individual capacity; | ) | |
| ONE UNKNOWN CHICAGO POLICE | ) | |
| OFFICER known as J. Turney; | ) | |
| SEVERAL UNKNOWN CHICAGO | ) | |
| POLICE OFFICERS; HOWARD | ) | |
| PETERS III, Secretary of Health and | ) | |
| Human Services, in his individual | ) | |
| capacity; STEVEN HARDY, in his | ) | |
| individual capacity; Director of Chester | ) | |
| Mental Health Center, in his individual | ) | |
| capacity; DR. FLORA BAETONG, | ) | |
| Committing Psychiatrist at Chicago Read | ) | |
| Mental Health Center; JUDY BAILEY, | ) | |
| Committing Social Worker, Chicago | ) | |
| Read Mental Health Center; DR. P. | ) | |
| TIONGSEN, Attending Psychiatrist at | ) | |
| Chester Mental Health Center; JOHN | ) | |
| JOHNSON, Committing Social Worker | ) | |
| at Chester Mental Health Center, | ) | |
| | ) | |
| Defendants. | ) | |

DOCKETED
SEP 28 2001

## MEMORANDUM OPINION AND ORDER

Plaintiff, Curtis Talley, filed a four-count Second Amended Complaint, alleging violations of 42 U.S.C. §§ 1983 and 1985, and Illinois state law. Defendants City of Chicago ("City") and Terry Hillard ("Hillard") moved to dismiss pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6) [#22], defendants Howard Peters III ("Peters), Steven Hardy

1

("Hardy"), Dr. Flora Baetong ("Baetong"), Judy Bailey ("Bailey"), Dr. P. Tiongsen ("Tiongsen") and John Johnson ("Johnson") moved to dismiss pursuant to Rule 12(b)(1) and 12(b)(6) [#24]. As set forth herein, the court denies motion [#22] as to Hillard but grants it as to the City and grants motion [#24], as set forth herein.

## BACKGROUND

Plaintiff alleges the following facts in his Second Amended Complaint: On October 8, 1999, plaintiff went to the police station to file a stolen driver's license report. While at the station, Chicago police officers treated him rudely and refused to provide him with a copy of the report. In response, plaintiff sent an angry letter to the Superintendent of the Chicago Police Department, Hillard, complaining about the way he had been treated at the police station. On October 14, 1999, a plain clothes Chicago police detective, J. Turney ("Turney"), asked plaintiff if he had written a letter to Hillard. When plaintiff responded that he had, Turney immediately arrested him and transported him to the police station. Plaintiff alleges that Turney could only have known about the letter if Hillard, or one of his representatives, had notified Turney, or one of Turney's supervisors, about the letter. Turney and other unknown police officers then transported plaintiff from the police station to Ravenswood Mental Health Center ("Ravenswood") where, upon the recommendation of Ravenswood personnel, plaintiff was committed on an emergency basis.

Approximately one week later, on October 20, defendants Baetong (psychiatrist) and Bailey (social worker) from Chicago Read Mental Health Center and defendants Tiongsen (psychiatrist) and Johnson (social worker) from Chester Mental Health Center ("Chester") petitioned the Circuit Court of Cook County for plaintiff's involuntary commitment, and he was

2

committed. While at Chester, plaintiff complained to Chester's director, defendant Hardy, about the deprivation of his civil rights but did not receive a response. Plaintiff also sent a letter defendant Peters, the Illinois Secretary of the Department of Health and Human Services, who has ultimate authority over discharges, but Peters never responded. On April 9, 2000, plaintiff continued to be involuntarily committed (upon the testimony of mental health personnel) and remained so until August 31, 2000; plaintiff's total involuntarily commitment lasted approximately 323 days. Plaintiff alleges that defendants violated his First, Fourth, Fifth and Fourteenth Amendment rights under 42 U.S.C. §§ 1983 and 1985, and his rights under Illinois law.

## MOTION TO DISMISS STANDARDS

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) challenges the sufficiency of the complaint for failure to state a claim upon which relief may be granted. *General Electric Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1080 (7th Cir. 1997). Dismissal is appropriate only if it appears beyond a doubt that the plaintiff can prove no facts in support of its claim that would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 101, 102 (1957); *Kennedy v. Nat'l Juvenile Det. Assoc.*, 187 F.3d 690, 695 (7th Cir. 1999). In ruling on the motion, the court accepts as true all well pleaded facts alleged in the complaint, and it draws all reasonable inferences from those facts in favor of the plaintiff. *Jackson v. E.J. Brach Corp.*, 176 F.3d 971, 977 (7th Cir. 1999); *Zemke v. City of Chicago*, 100 F.3d 511, 513 (7th Cir. 1996).

## DISCUSSION

Count I of the Second Amended Complaint is brought against defendants Turney and

other unknown Chicago police officers, defendant Hillard in his individual capacity, and defendant City for violations of 42 U.S.C. §§ 1983 and 1985. Count II is brought against defendants Baetong, Bailey, Tiongsen and Johnson, for violations of 42 U.S.C. § 1983. Count III is brought against defendants Peters and Hardy in their individual capacities, for violations of 42 U.S.C. §§ 1983 and 1985, and Illinois law. Count IV is brought against all defendants under Illinois law. Plaintiff seeks damages in the amount of $6,000,000 for each count.

**Count I: Section § 1983**

In order to state a § 1983 claim, a plaintiff must allege that the defendant deprived him of a constitutional or federal right and that the defendant acted under color of state law. *Brokaw v. Mercer County*, 235 F.3d 1000, 1009 (7th Cir. 2000) (citation omitted). Defendant Hillard argues that plaintiff has failed to adequately allege a constitutional injury or that Hillard was involved in any such alleged injury. *See Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995) (In a § 1983 claim against an official acting in his individual capacity, a plaintiff "must establish that a defendant was personally responsible for the deprivation of a constitutional right."). The court concludes that plaintiff has adequately alleged a First and Fourth Amendment violation against Hillard. Although plaintiff does not explicitly identify the First Amendment theory under which he proceeds, a claim for retaliation for the exercise of one's speech is made out where it is alleged that (1) plaintiff engaged in constitutionally protected speech, and, (2) defendant retaliated against him because of that speech. *Gustafson v. Jones*, 117 F.3d 1015, 1018 (7th Cir. 1997).[1] Protected speech is that which deals with matters of "public concern," and whether

---

[1] The First Amendment also prohibits state action that interferes with a private citizen's ability to petition the government for redress of grievances. *See California Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 510 (1972).

4

particular speech is protected is a question of law. *Connick* v. *Myers*, 461 U.S. 138, 145, 148 n.7 (1983). The court must consider the "content, form, and context of a given statement." *Id.* at 147-48. Although "fighting words" do not constituted protected speech, *Cohen* v. *California*, 403 U.S. 15, 19 (1971), it is well-established that the "right to criticize public officials is at the heart of the First Amendment's right of free speech[.]" *See Wilbur* v. *Mahan*, 3 F.3d 214, 215 (7th Cir. 1993) (citing *New York Times Co.* v. *Sullivan*, 376 U.S. 254 (1964)). Moreover, speech that focuses on police departments involves matters of great public concern. *Auriemma* v. *Rice*, 910 F.2d 1449, 1460 (7th Cir. 1990). Plaintiff did not attach a copy of the letter to his complaint, but alleges he sent an "angry" letter to Hillard "complaining" of the rude treatment that he received from Chicago police officers when he went to file a stolen driver's license report on October 8, 1999 and that they refused to provide him a copy of the report. (Sec. Am. Compl. ¶¶ 4-5). These allegations sufficiently allege matters of public concern, namely the operation of the police department in handling a citizen's query and providing information to citizens. The complaint also clearly alleges that he was retaliated against for his speech. Plaintiff alleges he wrote a letter to Hillard and eight days later, upon confirming to a police officer that he had written the letter to Hillard he was arrested, and taken to Ravenswood. Hillard's involvement is implicated because the letter was written to Hillard, and Hillard, or one of his representatives, allegedly informed the arresting officer of the letter. It is reasonable to assume that because Turney, who is under Hillard's command, subsequently arrested plaintiff, that Hillard at least facilitated plaintiff's arrest, if not directed it. *See Gentry*, 65 F.3d at 561 (It is sufficient for personal liability under §

1983 if defendant knows about the offending conduct, facilitates it, approves it, or condones it.).[2]

In order to prevail on a Fourth Amendment § 1983 claim for false arrest, plaintiff must allege a lack of probable cause for his arrest. *See Simmons v. Pryor*, 26 F.3d 650, 654 (7th Cir. 1994). Although plaintiff does not explicitly state he was "falsely" arrested, or arrested "without probable cause," taking the allegations as true that plaintiff was arrested after he told Turney that he wrote a letter to Hillard, the reasonable inference in the light most favorable to plaintiff is that he was arrested for writing the letter, which, without more, does not provide a ground for arrest. Although he was also subsequently involuntarily committed to a mental health center which suggest that Turney had probable cause to arrest plaintiff under some statutory provision governing involuntary commitments, at this juncture, the court must read inferences in favor of plaintiff. Moreover, probable cause is determined prior to, not after, an arrest. *Cf. McKinney v. George*, 556 F. Supp. 645, 649 n.8 (N.D. Ill. 1983), *aff'd*, 726 F.2d 1183 (7th Cir. 1984). Hillard's involvement is implicated for the same reasons as set forth above with respect to the retaliatory arrest. Therefore, plaintiff has sufficiently stated a claim against Hillard for a Fourth Amendment violation for false arrest.

Plaintiff, however, has failed to adequately allege municipal liability for the alleged acts of Hillard and the police officers. Plaintiff must allege that the city acted pursuant to a municipal policy or custom in depriving him of the alleged constitutional rights. *Monell v. Dep't of Soc. Servs. of the City of New York*, 436 U.S. 658, 690-91 (1978). "To state a claim for liability under

---

[2]Plaintiff also alleges defendants violated his Fifth Amendment rights. However, there is no indication in the Second Amended Complaint that plaintiff was compelled to incriminate himself, or that there is a double jeopardy issue, and the Due Process Clause of the Fifth Amendment only applies to actions by federal officials. *See LaBoy v. Zuley*, 747 F. Supp. 1284, 1286 (N.D. Ill. 1990). Therefore, any Fifth Amendment violation alleged against any of the defendants in the Second Amended Complaint fails.

§ 1983 against a municipality for acts of a municipal employee, a plaintiff must allege "(1) an express policy that, when enforced, causes a constitutional deprivation; (2) a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well-settled as to constitute a custom or usage with the force of law; or (3) . . . that the constitutional injury was caused by a person with final policymaking authority." *McTigue v. City of Chicago*, 60 F.3d 381, 382 (7th Cir. 1995) (internal quotation marks omitted). Plaintiff's complaint fails even to set forth conclusional allegations of a policy, *see Laningan v. Village of Hazel Crest, Illinois*, 110 F.3d 467, 480 (7th Cir. 1997), let alone any facts from which to infer a policy express or implied, or that the violation occurred at the hands of a final policy-maker, *see Auriemma*, 957 F.2d at 401 (City Council, rather than the Superintendent of Police, has final policymaking authority for the Police Department).

In his response, plaintiff relies on *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163 (1993), to assert that he is not subject to heightened pleading requirements and that he "cannot tell this Court what policy exists" but he "is entitled to . . . discovery" on this issue. *See* Pl.'s Mem. in Opp. to Defs.' City's and Hillard's Mot. at 4.[3] The plaintiff in *Leatherman*, however, at least alleged two unlawful searches and a failure of the municipal entities involved to train the officers. *See Leatherman*, 507 U.S. at 165-54. Here, plaintiff offers only the one incident of alleged unlawful arrest and no allegations of failure to train or any other type of municipal practice. At most, plaintiff's claim is a *respondeat superior* action, but the City cannot be vicariously liable for constitutional injuries by its employees. *McTigue*, 60 F.3d at 382. Thus, plaintiff fails to satisfy even the minimal Rule 8 pleading

---

[3]Plaintiff failed to number his pages, but the court does so here for convenience.

7

requirements to put defendant City on notice of a §1983 claim. *See Comito v. Crowe*, No. 98 C 1250, 1999 WL 168464, *4 (N.D. Ill. Mar. 18, 1999) (dismissing § 1983 claim against City where plaintiff's complaint failed to refer in any way to any municipal policy or custom, failed to allege defendants' actions constituted a municipal policy, or that defendants were final policy-makers). The court concludes that plaintiff has stated § 1983 claims against defendant Hillard for violations of his First and Fourth Amendment rights, but has failed to state a § 1983 claim against defendant City.

### Count II: Section 1983

Count II is brought against defendants Baetong, Bailey, Tiongsen, and Johnson in their individual capacities. The only allegations in the Second Amended Complaint with respect to these defendants are that on October 20, 1999, they petitioned the state court for his involuntary commitment, and he was committed. (Plaintiff had already been under emergency commitment, having been committed on October 14 upon the recommendation of Ravenswood personnel, after police officers brought him to Ravenswood.) Under the Fourteenth Amendment, a person has a "liberty interest in avoiding confinement in a mental hospital," *Zinermon v. Burch*, 494 U.S. 113, 131 (1990), and thus involuntary commitment constitutes a deprivation of liberty that requires due process protection. *See Vitek v. Jones*, 445 U.S. 480, 491-92 (1980) (commitment to mental hospital entails "a massive curtailment of liberty," and requires due process protection); *O'Connor v. Donaldson*, 422 U.S. 563, 580 (1975) (Burger, J., concurring) ("There can be no doubt that involuntary commitment to a mental hospital, like involuntary confinement of an individual for any reason, is a deprivation of liberty which the State cannot accomplish without due process of law. Commitment must be justified on the basis of a legitimate state interest, and

the reasons for committing a particular individual must be established in an appropriate proceeding. Equally important, confinement must cease when those reasons no longer exist.") (citations omitted).

Defendants contend that because the state court granted defendants' request for involuntary commitment, under the *Rooker-Feldman* doctrine, this court lacks subject matter jurisdiction over his claim because it would require this court to review a final judgment of the state court, and such claims must be pursued through the state system ultimately to the Supreme Court. *See Manley v. City of Chicago*, 236 F.3d 392, 396 (7th Cir. 2001); *Long v. Shorebank Dev. Corp.*, 182 F.3d 548, 554 (7th Cir. 1999). The doctrine applies to claims raised before the state court as well as those "inextricably intertwined with state court determinations." *Long*, 182 F.3d at 554. To determine whether the doctrine applies in a particular case, the court must determine "whether the injury alleged by the federal plaintiff resulted from the state court judgment itself or is distinct from that judgment." *Id.* at 555 (internal quotation marks and citation omitted). Plaintiff responds that he is not seeking to have this court review the state court's decision to commit him, but rather to have the federal court review the actions of defendants Baetong, Bailey, Tiongsen, Johnson, Hardy and Peters "both before and during the state court proceedings" and as such plaintiff is alleging a claim independent of the state court decision. *See* Pl.'s Mem. in Opp. to Peters', Hardy's, Baetong's, Bailey's, Tiongsen's and Johnson's Mot. at 3. However, despite the argument in his response brief, which does not even hint at the nature of defendants' alleged conduct prior to and during the commitment procedures, it cannot be reasonably inferred from the Second Amended Complaint that plaintiff is alleging anything other than that the commitment itself was unconstitutional. Because the only relief he

9

appears to seek from these defendants is damages for a Due Process violation for his involuntary commitment, it would be necessary for this court to review the state court's decision, a course that is barred by *Rooker-Feldman*. *Cf. Greist* v. *Norristown State Hospital*, No. 96 C 8495, 1997 WL 661097, *2 (E.D. Pa. Oct. 22, 1997) (granting dismissal of § 1983 suit for lack of subject matter jurisdiction under *Rooker-Feldman* where county court had granted hospital's petition for involuntary recommitment for 365 days). Therefore, plaintiff has failed to allege any § 1983 claims against the Count III defendants.

### Count III: Section 1983

Count III is brought against defendants Hardy and Peters, in their individual capacities, for their alleged failure to respond to plaintiff's complaints about civil rights violations. Although there is a First Amendment right of confined persons to have access to courts, which includes the ability to mail documents, *see Crowder* v. *Lash*, 687 F.2d 996, 1004 (7th Cir. 1982), plaintiff does not allege that he was attempting to gain access to the courts. The most that can be inferred from his allegations that "[w]hile involuntarily committed to Chester . . . he communicated his civil rights complaints to Steven Hardy [Chester's Director] but never received a response" and he "sent a letter to . . . Peters . . . who . . . has ultimate authority over discharge" but "Peters never responded," *see* Sec. Am. Compl. ¶¶ 16-17, is that plaintiff was attempting to secure his release from involuntary commitment. But, as set forth *supra* with respect to Count III, any challenge to his involuntary commitment in federal court is precluded under *Rooker-Feldman*. Another (less plausible) inference, but one which defendants suggest plaintiff may be making, is that Hardy and Peters are liable for the constitutional violations stated against the other defendants because plaintiff made Hardy and Peters aware of his "civil rights

10

complaints." The only violations that survive in this complaint are the First and Fourth Amendment violations with respect to Hillard and the police officers, who allegedly implemented Hillard's directive to arrest plaintiff. That Hardy and Peters might have been made aware of such alleged violations through plaintiff's communication to them, however, is not enough to implicate their involvement in these alleged violations. *See Crowder*, 687 F.2d at 1005-06. Therefore, plaintiff has failed to state any § 1983 claims against defendants Hardy and Peters.[4]

### Counts I, III: Section 1985

In Counts I and III, plaintiff asserts a violation of 42 U.S.C. § 1985. Plaintiff does not specify which subparagraph of § 1985 he is proceeding under. However, in his response, he focuses on a conspiracy between all defendants (thus apparently he meant to include a § 1985 allegation with respect to Count II as well), and the applicable conspiracy provision is § 1985(3). In order to state a claim under § 1985(3), a plaintiff "must allege (1) the existence of a conspiracy, (2) a purpose of depriving a person or class of persons of the equal protection of the laws, (3) an act in furtherance of the conspiracy, and (4) an injury to person or property or a deprivation of a right or privilege granted to U.S. citizens." *Brokaw*, 235 F.3d at 1024 (internal quotation marks and citation omitted). In order to establish that the purpose of the conspiracy is to "deprive a person or class of persons of equal protection of the laws," the plaintiff must allege "'some racial, or perhaps otherwise class-based invidiously discriminatory animus behind the conspirators' action.'" *Id.* (quoting *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971)).

---

[4]Because the court finds no basis for any § 1983 claim against the Count II and Count III defendants, the court does not address their qualified immunity argument.

11

"Otherwise class-based invidiously discriminatory animus includes conspiracies to discriminate against persons based on sex, religion, ethnicity or political loyalty." *Id.* (internal quotation marks and citation omitted). In his response to the City's and Hillard's motion to dismiss, plaintiff asserts the that he sent Hillard the letter, and that City and State employees," carried out the constitutional violations." Further, he asserts that the "City employees were presumably under Hillard's command," and that and it "can be easily be inferred that Hillard had an appropriate conspiratorial mental state: either as the head of the conspiracy or as a voluntary participant, perhaps knowing the details of the plan implemented by others" (presumably a plan to involuntarily commit plaintiff). *See* Pl.'s Mem. in Opp. to Defs.' City's and Hillard's Mot. at 5. However, without even reaching whether there are allegations to satisfy any of the other elements of this claims in the complaint, there are no allegations from which to infer that plaintiff was invidiously discriminated against for a class-based reason. There are no allegations as to his race, sex, heritage, religion, even that he is mentally handicapped. Indeed, the inferences from the allegations would suggest that he does not have a mental condition which might have been underlying his involuntary commitment. *See Davenport v. St. Mary Hosp.*, 633 F. Supp. 1228, 1238 (E.D. Pa. 1986) (dismissing § 1985(3) claim for failure to allege racial or otherwise class-based discriminatory animus). Therefore, plaintiff fails to state a § 1985 claim against defendants.

### Count IV: Illinois Law

Plaintiff alleges violations of "Illinois law" against all defendants. However, the only federal claims that survive in plaintiff's Second Amended Complaint are those against Hillard and the police officers. As to the them (or any other defendant for that matter), plaintiff has not

pointed to, nor can the court infer, any Illinois causes of action. Therefore, plaintiff has failed to state a cause of action under Illinois law.

## CONCLUSION

The court denies motion [#22] as to Hillard but grants it as to the City and grants motion [#24], as follows: all claims against defendant City are dismissed; all claims against defendants Peters, Hardy, Baetong, Bailey, Tiongsen and Johnson are dismissed; Count I § 1983 claim with respect to Hillard, in his individual capacity, survives, as does any claim with respect to the unknown police officers, since they have not moved for dismissal. Because this is plaintiff's third attempt to plead his claims, the dismissed claims are dismissed with prejudice.

ENTER: /s/ Joan H. Lefkow
JOAN HUMPHREY LEFKOW
United States District Judge

Date: September 28, 2001